**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**SHANNON ALBRIGHT,**

       **Plaintiff,**

       **v.**                           **CASE NO.  23-3242-JWL**

**TANNER HARBIN, et al.,**

       **Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff Shannon Albright is hereby required to show good cause, in writing, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I.  Nature of the Matter before the Court**

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  Plaintiff is currently confined at the El Dorado Correctional Facility in El Dorado, Kansas, but the events forming the basis of his Complaint occurred when he was detained at the Harvey County Detention Center in Newton, Kansas ("HCDC").  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that officers of the HCDC used excessive force against him on March 29, 2022.  Plaintiff states that he asked Officer Koonce to contact the shift officer in charge, Lieutenant Garver, so Plaintiff could "speak to him about his continued 'lockdown' status that had lasted beyond the procedurally authorized 48 hours."  (Doc. 1-1, at 2.)  Koonce instructed Plaintiff to return to his cell, which "he peacefully declined to do."  *Id.*  Plaintiff remained sitting at the kiosk where he had been typing.  *Id.*  Koonce was instructed by Officer Harbin to lock the pod down.

General radio traffic went out to all officers stating that Plaintiff was noncompliant and refusing to lock down.  *Id.*  Officers Harbin, Wenger, Ledesma, Church, and Garver formed a response team and proceeded to the pod where Plaintiff was refusing to return to his cell.  Harbin again ordered Plaintiff to lock down.  Plaintiff refused, insisting that he speak with and receive "a directive" from Garver.  Harbin, Wenger, and Ledesma advanced toward Plaintiff, and Plaintiff fled up the stairs and over the handrail to stand on the second-floor balcony.  *Id.* at 3.  Garver arrived on the unit and told Plaintiff to calm down and he could speak with Garver.  An officer grabbed Plaintiff and returned him to the ground floor.  Garver then refused to speak with Plaintiff and ordered him to return to his cell.  Plaintiff asserts that he complied and was escorted to his cell by Harbin, Wenger, and Ledesma.  *Id.*

According to the Complaint, when Plaintiff reached his cell, he turned around and "continued to attempt to address Lieutenant Garver."  *Id.* at 4.  Harbin then said, "No, you're going in your cell now."  He grabbed Plaintiff by his jumpsuit and shoved him into the cell.  *Id.*  He and Wenger then pinned Plaintiff against the wall, and Harbin "started throwing a barrage of punches." *Id.*  Plaintiff attempted to block the punches and "reached his arm and hand out to distance himself" from Harbin.  *Id.*  Harbin pushed Plaintiff up against the bunk and put him in a headlock.  *Id.* Garver entered the cell and ordered Plaintiff to give him his hands so he could be restrained.  *Id.* at 5.  Plaintiff was restrained and escorted to another cell.  *Id.*  While being escorted, Wenger repeatedly jerked the restraints, causing them to dig into Plaintiff's wrists.  *Id.*  Plaintiff's wrists were swollen and painful after the incident.  *Id.*

Plaintiff claims that the defendants' actions constituted a violation of his due process rights under the Fourteenth Amendment.  He further claims their actions constituted the tort of assault and battery under state law.  *Id.* at 7.  Plaintiff names Harbin, Garver, Ledesma, and Wenger as

defendants.  *Id.* at 2.  He seeks relief in the form of compensatory damages of $20,000, jointly and severally, and punitive damages of $5,000 from each defendant.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

4

## III.  DISCUSSION

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).  Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment.  *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019).  They are assessed under the Fourteenth Amendment.  *Id.*

The U.S. Supreme Court in *Kingsley* held that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015)); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Whether the force used was objectively unreasonable "turns on the 'facts and circumstances of each particular case.'"  *Kingsley*. 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  However, the Supreme Court has identified the following nonexclusive list of factors as bearing on the reasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* In considering these factors, it is appropriate to "take account of the legitimate interests in managing a jail" and defer to "policies and practices needed to maintain order and institutional security." *Id.* at 399-400.

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff's description of events shows that the use of force event started when he refused to comply with an order to return to his cell. He then fled from the officers. When he was finally escorted to his cell, he refused to enter the cell, instead stopping to continue to try to speak to Garver. Then, he alleges that he was pushed into his cell, repeatedly punched, and placed in a headlock. Plaintiff does not allege any injuries from these actions. The only injuries he mentions were swollen wrists from the restraints. Based on Plaintiff's allegations, the Court cannot find that the force used was objectively unreasonable.

Regarding Plaintiff's claim of the tort of assault and battery, the Court finds that it is well-settled that state law violations are not grounds for relief under § 1983. "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted). This Court is not obliged to exercise supplemental jurisdiction over any state law claims, even if valid, given that Plaintiff's federal constitutional claim is subject to dismissal. *See* 28 U.S.C. § 1367(c)(3).

Plaintiff should show good cause why Complaint should not be dismissed.

**IV. Response Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **January 16, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated December 15, 2023, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**